## AFFIDAVIT

I, Philip Tremblay, being sworn, depose and state as follows:

1.  I am assigned to the Detective Service Bureau – Narcotics Unit of the Burlington Police Department as a Detective. I have been employed by the Burlington Police Department since January 2012 and was certified in May 2012. In connection with my duties and responsibilities, I have received extensive training, both formal and informal, in the field of narcotics investigation and enforcement. I have also participated in investigations relating specifically to the possession and distribution of heroin and "crack" cocaine, the types of drugs that are being distributed by the persons under investigation here. I have also participated in various aspects of investigatory work, including undercover surveillance and undercover narcotics purchases. I have participated in several narcotics-related arrests and the execution of many narcotics-related search warrants. I have written affidavits in support of search and arrest warrants, and I frequently utilize the services of informants and other confidential sources of information.

2.  This affidavit is submitted to establish probable cause to believe that on or about August 13, 2018, Lateef ATKINS and Jamel TAYLOR violated 21 U.S.C. §§ 841(a) and 846 by conspiring to distribute cocaine base, a schedule II controlled substance.

3.  I am familiar with the facts and circumstances of this investigation based on my personal participation in this case, my discussion with other law enforcement agents, my discussions with witnesses involved in the investigation, and my review of records, recordings, and reports relating to the investigation.

4.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included details of every aspect of my investigation nor have I included all the details of other investigations known to me.

1

## Probable Cause

5.      Prior to August 13, 2018, Lateef ATKINS was identified as a source of supply for "crack" cocaine from Philadelphia, PA to the greater Burlington, VT area. On August 13, 2018 a Burlington Police Confidential Informant (CI) who is compensated monetarily for its services contacted law enforcement. The CI advised law enforcement that at least two individuals from Philadelphia who have been selling controlled substances from 230 St. Paul St. in Burlington, VT were currently in Boston, Massachusetts and would be arriving to Burlington by bus with a large amount of drugs for distribution on the afternoon of August 13, 2018. A review of the CI's criminal history revealed the following criminal convictions for the listed offenses: Simple Assault on a Law Enforcement Officer-Bodily Injury; Assault on a Corrections Officer; Simple Assault – two counts; Disorderly Conduct – two counts; Retail Theft $900 or less; Vehicle Operation License Suspended; False Information to Law Enforcement Officer; DUI#1 – Drug or both; Violation of Probation – seven counts; Cocaine Possession – three counts; Domestic Assault; Profane Swearing or Intoxication in Public.

6.      After the CI contacted law enforcement, Burlington Police Det. Weinisch conducted a check of the various buses that would be arriving to the Burlington area. This check of bus schedules revealed a Megabus scheduled to arrive from Boston on Pearl Street in Burlington at approximately 3:25 p.m. Subsequently a plan was formulated to establish surveillance in the area of Decker Towers, which is the name for the building at 230 St. Paul Street in Burlington, VT, and the bus stop on Pearl Street, which is across the street from the Federal Building located at 11 Elmwood Avenue.

7.      At approximately 3:36 p.m., a Megabus was observed arriving at the bus stop on Pearl Street in Burlington, VT just west of Papa John's Pizza. I learned from Burlington Police Det.

Sgt. Merchand and Det. Stoughton that they observed two males getting off the bus together and walking away from the bus stop together. Det. Sgt. Merchand recognized one of the males from prior police interaction as Lateef ATKINS, who is from Philadelphia, PA, and who has previously been identified as distributing crack cocaine from Decker Towers in Burlington, VT. Det. Sgt. Merchand and Det. Stoughton observed ATKINS rolling a small black duffel bag with a gift bag on top of it. ATKINS was observed to be wearing a purple-colored raincoat. The other male, who was wearing an orange top, was carrying a plastic bag. This male was later positively identified as Jamel TAYLOR.

8. Det. Sgt. Merchand and Det. Stoughton told me the following information, and I have reviewed some surveillance footage of the following events. After departing the bus, both ATKINS and TAYLOR walked east to the intersection of Pearl St. and Church St. Surveillance observed ATKINS utilizing a cellular telephone and looking around the area. Both males then walked west on Pearl St. and walked down the alleyway to the east of Papa John's Pizza. At the time, ATKINS was observed rolling the black duffel bag. Both males were observed approximately less than a minute later approaching a silver-colored Subaru that was waiting in the rear parking lot of Papa John's Pizza with its lights on and had an exterior fog lamp out on the passenger side of the vehicle. Det. Sgt. Merchand observed TAYLOR at the back of the silver Subaru, where he placed the plastic bag he was carrying into the rear of the vehicle accessed by the tailgate. TAYLOR then went to the passenger side of the silver Subaru.

9. Det. Sgt. Merchand also told me that he reviewed video footage obtained from a nearby building that shows ATKINS approach the passenger side of the silver Subaru with the black duffel bag and then approach and open the rear passenger door while Taylor was opening the rear hatchback of the same vehicle. After that, ATKINS can be seen closing the rear passenger

3

door and then walking towards the front of the vehicle. After that, Det. Sgt. Merchand told me that he observed ATKINS cross the street without the black duffel bag and enter a maroon-colored Toyota Camry, which was parked on Elmwood Avenue. The silver Subaru Taylor got into pulled out of the Papa John's Pizza parking lot and traveled north on Elmwood Avenue. The maroon Camry ATKINS got into followed the silver Subaru. Both vehicles traveled north on Elmwood Avenue to North Street where both vehicles turned east on to North Street.

10. Burlington Police Officer Vivori then initiated a traffic stop on the silver-colored Subaru, bearing Vermont registration HDN969, for the defective front fog light. The operator identified herself as Lindsey M. Bessette, and the male passenger identified himself verbally as "Eric Johnson" with a year of birth of 1989. The male advised he had previously held identification out of the states of Delaware and Pennsylvania. No records were found for that individual.

11. I arrived on scene and spoke with the operator, who stated her name was Lindsey Bessette. I later learned that the operator provided a false name. The operator advised that she did not know the male in the vehicle but had agreed to pick him up at the bus station and bring him to the University Mall to ultimately meet with her daughter. The operator provided consent for me to search the vehicle that she had been operating. It should be noted that the operator requested to call the owner of the vehicle (identified as Patrick French) and asked his opinion prior to providing consent. Both the owner and the operator consented to a search of the vehicle. Prior to searching the vehicle, the operator requested her purse and her cell phone, which were obtained and searched with her permission. She advised that she did not have any other belongings within the vehicle.

12. I then made contact with the male who had identified himself as "Eric Johnson." The male consented to a search of his person and identified his belongings as being in a plastic bag

within the trunk of the vehicle. I completed the searching of those items, which yielded nothing of interest. This male was later identified as Jamel TAYLOR with a year of birth of 1991.

13. I then noticed a second bag within the backseat of the vehicle which appeared black in color and had wheels and an extended handle for traveling purposes. Based on my later review of surveillance footage, this bag appeared consistent with the black duffel bag ATKINS was rolling when he exited the Megabus. This black duffel bag also had a black shopping bag wrapped around it with a red colored Nike shoe box inside it. TAYLOR advised that the black duffel bag in the backseat did not belong to him.

14. I continued to search through the vehicle and informed the male that I knew he was not being honest about his name and asked if he had a warrant out. At that time, the male was being detained but was not in handcuffs or under arrest. He made and received phone calls during this time and was standing outside of the vehicle. He then identified himself verbally as Jamel TAYLOR (year of birth 1991). I later learned from Burlington Police dispatch that TAYLOR had an active warrant out of Pennsylvania and that the warrant was extraditable.

15. While searching the black duffel bag in the backseat of the vehicle, I located a black plastic bag with multiple clear plastic bags within it. This was located within a side zipper compartment of the black duffel bag and, based on my training and experience, appeared to contain a significant amount of illegal drugs. The clear plastic bags further contained a white rock like substance and/or a tan powdered substance. Based on my training and experience, these substances appeared to be consistent with "crack" cocaine and heroin, respectively. Upon opening the black plastic bag, I could immediately detect a strong chemical smell which I know based on my training and experience is common with cutting agents associated with "crack" cocaine.

16. In the black duffel bag, I also found a ticket for a Greyhound bus from Boston, MA to Burlington, VT dated August 13, 2018 with a boarding time of 7:00 a.m. The ticket had the name "Lateef ATKINS" on it. Also in the black duffel bag, I found a plastic bag with apparent marijuana in it. Based on my training and experience, it appeared to be approximately one ounce of marijuana. Finally, I found men's clothing within the black duffel bag along with basic hygiene products such as deodorant and a toothbrush.

17. TAYLOR was transported to the Burlington Police Department where he provided further identifying information, including his knowledge that he had an active warrant in the state of Pennsylvania for a Parole Violation stemming from an underlying drug conviction. Burlington Police Detective/DEA Task Force Officer Dwayne Mellis made contact with Courtney Douden with the Pennsylvania Board of Probation and Parole who sent a booking photograph of TAYLOR, who I immediately recognized as the male we had in custody.

18. Det. Weinisch and I spoke with TAYLOR within an interview room while my audio recording device was activated. TAYLOR waived *Miranda* in writing and on the audio recording. TAYLOR advised that this was his first time in Vermont and that he had traveled from Philadelphia, PA to Boston, MA to Burlington, VT with ATKINS. TAYLOR stated that he and ATKINS were not close, but both were traveling to Vermont and therefore traveled together. TAYLOR advised that he had all of his luggage in a plastic bag which he had identified to me on scene of the traffic stop. TAYLOR advised that ATKINS also had luggage, but seemed hesitant to specifically state that the black duffel bag belonged to ATKINS. TAYLOR referenced a bus ticket that had ATKINS' name on it found within the black duffel bag where the drugs were located. TAYLOR stated words to the effect there was there was a name on the ticket in the luggage, so that is who the luggage belongs to. TAYLOR stated that he had no knowledge of

illegal drugs being within the bag and that he was going to Vermont to visit a female he met online and only knew as "Tiara."

19.     TAYLOR had two cell phones located among his things. TAYLOR provided consent for me to search both cell phones. Det. Stoughton completed downloads of both phones. I briefly reviewed the data obtained from TAYLOR's cell phone, which showed a video taken on August 13, 2018 at 7:33 a.m. This video shows a male I immediately recognized as ATKINS rolling the same black duffel bag down a city street chanting "Boston strong, Boston strong." ATKINS is wearing the same purple raincoat that he was observed wearing later when investigators observed him, and was in sole possession of the black duffel bag. Det. Stoughton told me that the cell phone also shows a total of approximately twenty phone calls between ATKINS and TAYLOR within the 48 hours prior to TAYLOR being taken into custody.

20.     Minutes after Officer Vivori initiated a traffic stop on the silver Subaru, Officer Seller initiated a traffic stop on the maroon-colored Toyota Camry that ATKINS was seen getting into (VT registration GMS677). I learned the following from Det. Sgt. Merchand and Det. Stoughton, who had been observing the maroon Toyota Camry. Det. Sgt. Merchand and Det. Stoughton observed the Camry operating at a high rate of speed and running a stop sign within a Burlington neighborhood. Officer Seller stopped the Toyota Camry. The operator was identified as Avery L. Walters, year of birth 1990. Det. Sgt. Merchand responded to the vehicle and identified ATKINS from prior law enforcement interactions. Det. Sgt. Merchand told me that he did not observe any apparent luggage within the vehicle.

21.     Det. Sgt. Merchand spoke with ATKINS separate from Walters and told me about the conversation. ATKINS advised he did not know TAYLOR'S government name, but was familiar with him from Philadelphia and that they had come up to Vermont together on the bus.

7

ATKINS referenced the fact that he believed there would be at least 7 grams of "crack" cocaine possibly on TAYLOR'S person. ATKINS also stated that he had just under one ounce of marijuana which would be found in a bag, but was confident that it was not an illegal substance in Vermont. ATKINS and Walters were later released from the scene.

22. I later conferred with Det. Sgt. Merchand and DEA Special Agent Timothy Hoffman about TAYLOR's statements. ATKINS was relocated to attempt to clarify his account of what had occurred and was transported to the Burlington Police Department to provide a statement. ATKINS waived *Miranda* in writing and while my audio recording device was running. I spoke with ATKINS within an interview room along with DEA TFO Mellis.

23. ATKINS reiterated that he and TAYLOR came from Philadelphia together, through Boston, MA and onto Burlington, VT. ATKINS advised that the black duffel bag was primarily in TAYLOR'S possession. ATKINS initially stated that he only brought a single Nike shoe box with a pair of shoes in it for his trip to Vermont, as he was only planning on staying for a couple of days to meet with his public defender. ATKINS later changed his story and stated he had some belongings within the black duffel bag such as a toothbrush and deodorant. When I confronted ATKINS with the fact that he was seen wheeling the luggage bag he advised that he may have carried it for a while because he and TAYLOR took turns carrying the luggage. When I asked ATKINS how he had not seen the drugs within the luggage when he put his belongings within it, he advised that TAYLOR was carrying the illegal drugs in his crotch for the beginning of the trip. ATKINS advised he knew this because he also was carrying his marijuana in his crotch until they got out of Boston. ATKINS stated he did not know when exactly TAYLOR placed the drugs into the bag from his crotch area, but he believed it to take place while on the bus from Boston, MA to Burlington, VT.

24. ATKINS went on to say that he was still actively engaged in drug sales in the area of Decker Towers, but that he only brought up 7 grams of "crack" cocaine at a time to sell and did not sell heroin. He stated 7 grams of "crack" cocaine was enough in Vermont due to the profit margin compared to Philadelphia. ATKINS advised that he believed TAYLOR to only be carrying 7 grams of "crack" cocaine for that trip.

25. When I asked ATKINS about the ticket within the black duffel bag with his name on it, ATKINS advised that they had missed their greyhound connection due to a delay leaving Philadelphia. ATKINS said that they were given free tickets onto the Megabus due to extra seats so he just threw the extra ticket into the black duffel bag. This statement did not make sense to me as ATKINS had stated that the majority of belongings in the bag belonged to TAYLOR, and therefore ATKINS would have no reason to throw the ticket into the bag.

26. Back at the Burlington Police Department, Det. Stoughton and Officer Kirby field tested the suspected "crack" cocaine within the clear plastic bags located within the luggage. Det. Stoughton told me that a sample of the substance tested presumptively positive for cocaine and weighed a total of 93.6 grams with packaging. The suspected heroin was consistent with heroin in appearance and packaging, but did not field test positive for heroin. I know based on my experience that this has previously occurred with a similar looking substance that tested positive for fentanyl. Due to the safety risks associated with fentanyl, no further immediate field tests were done after the original inconclusive test. The total weight of this substance was 15.6 grams including packaging.

27. Based on my training and experience, the quantities of controlled substances seized from the black duffel bag are consistent with drug distribution rather than personal use.

28. Based on the above information, I believe that probable cause exists that on or about August 13, 2018, Lateef ATKINS and Jamel TAYLOR conspired to distribute cocaine base, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a) and 846.

Dated at Burlington, in the District of Vermont, on August 14, 2018.

_____
Philip Tremblay
Detective, Burlington Police Department


Sworn and subscribed before me on August 14, 2018.

_____
Hon. John M. Conroy
United States Magistrate Judge